## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re | |
| **BRENDON KEITH RETZ**, | Case No.  **04-60302-7** |
| Debtor. | |
| **RICHARD J. SAMSON**, | |
| Plaintiff. | |
| -vs- | Adv No.  **05-00016** |
| **BRENDON KEITH RETZ**, | |
| Defendant. | |

## MEMORANDUM   OF   DECISION

At Butte in said District this 21ˢᵗ day of March, 2007.

Plaintiff, Richard J. Samson ("Samson"), of Missoula, Montana, as a Chapter 7 trustee, initiated this adversary proceeding against Defendant Brendon Keith Retz ("Retz") on March 7, 2005.  By several stipulations filed and approved by the Court, the parties stipulated that Retz would not be required to file an answer until June 30,2006.  Retz filed an answer on June 30, 2006.  The Court conducted a pretrial scheduling conference on August 8, 2006, and scheduled a trial in this proceeding for January 26, 2007.  The Court approved a stipulation allowing the parties until January 9, 2007, to file pretrial motions.  Samson filed a motion for partial summary judgment as to Counts I and II of the complaint on January 9, 2007, solely on the basis of 11

1

U.S.C. § 727(a)(4), even though Samson alleges that discharge should be denied in these two counts on the basis of 11 U.S.C. §§ 727(a)(2) and (4).  Based upon a consensual motion, the Court amended the pretrial scheduling order and rescheduled several deadlines contained in the pretrial scheduling order and rescheduled the trial for March 27, 2007.  Retz filed a response to Samson's motion for partial summary judgment on January 22, 2007 and requested more time to file his brief in opposition to Samson's motion for partial summary judgment.  The Court grant the motion to extend Retz's briefing schedule.  On February 21, 2007, Retz again filed a response to Samson's motion together with a statement of genuine issues of fact, affidavits and a brief. Samson filed a reply to Retz's response.  The Court conducted a brief hearing on the motion for partial summary judgment on March 8, 2007, and took the motion under advisement.  The Court has reviewed the motion and related pleadings filed by Samson and the response and related pleadings filed by Dye; this matter is ready for a decision.  This memorandum contains the Court's findings of fact and conclusions of law.

### FACTS

Samson filed the following statement of facts of uncontroverted facts, doc. no. 37:

1. The Debtor filed a voluntary Chapter 7 petition in the United States Bankruptcy Court for the District of Montana on February 12, 2004. (Pacer Docket No. 1).

2. The Plaintiff was appointed to serve as the Trustee in this case on the same date.  (Pacer Docket No. 2).

3. At the time of the filing of his voluntary Chapter 7 petition on February 12, 2004, the Debtor did not file his Schedules and Statement of Financial Affairs with the Court. (Pacer Docket No. 1).

4. The Debtor's Schedules and Statement of Financial Affairs were filed with the Court on March 1, 2004. (Pacer Docket No. 7).

2

5. At the time the Debtor's Schedules and Statement of Financial Affairs were filed with the Court, they included the Debtor's signed declarations attesting under penalty of perjury that the information contained in both his Schedules and Statement of Financial Affairs was true and correct. (Exhibits 1 and 2).
6. The initial § 341 meeting of creditors was held in this case on March 19, 2004, in Kalispell, Montana. (Pacer Docket No. 9).

7. At the time of the § 341 Meeting of Creditors, the Debtor signed a separate Declaration under penalty of perjury attesting to the fact that he had read his petition, schedules of assets and liabilities, and statement of financial affairs on file in his bankruptcy case pending before the Court and that all of the answers and information provided in such documents, and any attachments thereto, were true and correct to the best of the Debtor's knowledge, information and belief. (Exhibit 3).

8. After receiving testimony from the Debtor at the initial § 341 meeting of creditors on March 19, 2004, the Trustee orally continued the creditor meeting to July 8, 2004, in Missoula, Montana. (Exhibit 4 -Transcript of § 341 Meeting of Creditors held on 3/19/04 and Pacer Docket Entry dated June 21, 2004 - no docket number assigned).

9. On July 6, 2004, the Trustee sent by facsimile a letter to Debtor's counsel in an effort to clarify and specify all remaining information, documents and related materials that were to be provided to the Trustee by the Debtor. (Exhibit 5).

10. On July 8, 2004, the continued § 341 meeting of creditors was held in this case.  (Exhibit 6 - Transcript of continued § 341 Meeting of Creditors held on 7/8/04).

11. On or about October 28, 2004, the Trustee received additional documents and related information from the Debtor in response to the Trustee's letter to Debtor's counsel dated July 6, 2004, referenced in paragraph 9, above. (Exhibit 7).

12. On March 7, 2005, the Plaintiff filed his Complaint in this case seeking denial of the Debtor's discharge, pursuant to 11 U.S.C. § 727. (Pacer Docket No. 1 in Adversary Proceeding No. 05/00016).

13. The Debtor, through counsel, filed his Answer to the Complaint filed in this case on June 30, 2006. (Pacer Docket No. 21 in Adversary Proceeding No. 05/00016).

14. Since the filing of his Schedules and Statement of Financial Affairs with the Court in this case on March 1, 2004, the Debtor has failed to file with the Court

any amendments to his Schedules or Statement of Financial Affairs. (Affidavit of Richard J. Samson - Exhibit 8).

Retz filed his statement of genuine issues of fact on February 21, 2007, doc. no. 51, in opposition to Samson's statement of uncontroverted facts.  The statement of genuine issues of fact are follows:

> 1. Defendant's intent remains at issue. Nothing in the record establishes that Defendant acted with the requisite intent to "hinder, delay or defraud" or "knowingly and fraudulently made a false oath or account in connection with this case."

> 2. Nothing in the record in record (sic) establishes that the omission of bank accounts was anything other than inadvertent (Complaint Paragraph 7, Answer Paragraph 5).

> 3. Nothing in the record in the record establishes that Debtor purchased a computer or computers for his own use (as opposed for Timberland Construction, Inc.) (Complaint Paragraph 8, Answer Paragraph 6).

> 4. Nothing in the record in the record establishes that Debtor purchased or owned "furs and jewelry" in excess of $200.00. No fact in the record establishes that jewelry purchased in 2002 was not a gift as stated in paragraph 7 of the Answer. (Complaint Paragraph 9, Answer Paragraph 7).

> 5. Nothing in the record in the record establishes that Debtor's six percent interest in the North Forty Resort Corp was worth $100,000.00 or that debtor knew that his interest was worth that amount instead of being an unknown value. Nothing in the record in the record establishes that North Forty was not a closely held, family held corporation. (Complaint Paragraph 10, Answer Paragraph 8).

> 6. Nothing in the record in the record establishes that Defendant's omission of scheduling a 1984 Cadillac was anything other than inadvertence or that the omission was made with the intent to defraud. (Complaint Paragraph 11, Answer Paragraph 9).

> 7. Nothing in the record in the record establishes that the purchase of office copier and related equipment was for Defendant's personal purposes or was a personal asset. Nothing in the record in the record establishes that the equipment was not purchased for Timberland Construction, Inc. Nothing in the record shows that the purchase was through a personal as opposed to a business credit card. (Complaint paragraph 12, Answer paragraph 10).

8. Nothing in the record in the record establishes that any answers to questions 2, 4, 7, 12, 23 and 26 of Schedule B were made with intent to hinder, delay or defraud Defendant's creditors or an officer of the estate or that Defendant concealed property of the estate. (Complaint Paragraph 13, Answer Paragraph 11).

9. Nothing in the record in the record establishes that answers to questions 2, 4, 7, 12, 23 and 26 of Schedule B were knowingly and fraudulently made, (Complaint Paragraph 14, Answer Paragraph 11).

10. Nothing in the record establishes that Defendant did not make it clear to the Plaintiff at the § 341 meeting and otherwise that Defendant had been engaged in business in 2003 and 2004 but due to his dispute with Donald Abbey the amount of such income could not be determined with precision if at all. (Complaint Paragraph 18; Answer Paragraph 14).

11. Nothing in the record establishes that Defendant did not supply Plaintiff with information regarding the payments made within 90 days of the bankruptcy petition as such information became available. (Complaint Paragraphs 20 and 21; Answer Paragraphs 15 and 16).

12. Nothing in the record establishes Defendant did not furnish Plaintiff regarding extensive documentation regarding the supposed transfers to North Forty Resort Corporation.  No facts in the record establishes that after filing the complaint Plaintiff investigated the situation and concluded that there was no preference of fraudulent transfer from Defendant to North Forty. (Complaint Paragraph 24, Answer Paragraph 18). In fact the contrary appears of record. *See* Motion to Approve Settlement Agreements dated April 26, 2006 and attached settlement agreement.

13. Nothing in the record establishes that omission of Retz v. Abbey lawsuit was anything other than inadvertence. Nothing in the record establishes the existence of the lawsuit was made known to Plaintiff virtually from the inception of the case. (Complaint Paragraph 27, Answer Paragraph 20).

14. Nothing in the (sic) establishes that Defendant did not furnish Plaintiff with full documentation regarding the transfers as set forth in paragraph 30 of the Complaint. (Complaint Paragraph 30, Answer Paragraph 22).

15. Nothing in the record establishes that Defendant did not furnish Plaintiff with full documentation regarding Timberland Construction, Inc.; Timberland Construction, LLC; Timberland Properties, LLC and North Forty Resort Corporation and Riverside Development LLC. (Complaint Paragraph 33, Answer Paragraph 24).

16. Nothing in the record establishes that the answers to questions 1, 3a, 3b, 4, 10 and 18 of the statement of financial affairs were made with the intent to hinder, delay or defraud Defendant's creditors. (Complaint Paragraph 34, Answer Paragraph 25).

17. Nothing in the record establishes that answers to questions 1, 3a, 3b, 4, 10 and 18 in the statement of financial affairs were knowingly and fraudulently made. (Complaint Paragraph 35, Answer Paragraph 25).

## JURISDICTION

Plaintiffs allege and Defendants do not dispute that this Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157 and 1334.

## APPLICABLE LAW

### I. SUMMARY JUDGMENT

Summary judgment is governed by FED. R. BANKR. P. 7056. Rule 7056, incorporating FED. R. CIV. P. 56(c), states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial." *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (quoting *Grzybowski v. Aquaslide "N' Dive Corp. (In re Aquaslide "N" Dive Corp.)*, 85 B.R. 545, 547 (9th Cir. BAP 1987)). The manner in which this burden is proven depends on which party has the burden on a particular claim or defense at the time of trial.

If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence–using any of the materials specified in Rule 56(c)–that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing

the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery.  If the burden of persuasion at trial would be on the *non-moving* party, the party moving for summary judgment may satisfy Rule 56's burden of production in either of two ways. First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim. Second, the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 330-34, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265  (1986) (Brennan dissent) (citations omitted).  *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-06 (9th Cir. 2000) (discussing burdens for withstanding summary judgment).

When seeking summary judgment, the moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987).  If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986); FED. R. CIV. P. 56(e)*.  See also Frederick S. Wyle Prof'l. Corp. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985) ("the opponent must affirmatively show that a material issue of fact remains in dispute").  That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  Moreover, "[a] party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

To demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible into evidence.  *Aquaslide*, 85 B.R. at 547.  All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party.  *Liberty Lobby,* 477 U.S. at 247-48, 106 S.Ct. at 2509.  However, "[d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv.*, 809 F.2d at 630 (citing *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510).  "A 'material' fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit.  The materiality of a fact is thus determined by the substantive law governing the claim or defense."  *Id*.

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied.  *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986).  Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence.  *T.W. Elec. Serv.*, 809 F.2d at 631.  In the absence of any disputed material facts, the inquiry shifts to whether the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552-53.

### II. OBJECTION TO DISCHARGE, 11 U.S.C. § 727(a)(4)

Section 727(a) of Title 11 provides "[t]he court shall grant the debtor a discharge, unless – (4) the debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account."  Under FED. R. BANKR. P. 4005, Samson, at trial, has the burden of proving the objection.  As noted above in *Celotex*, 477 U.S. at 330-34, 106 S.Ct. at 2557, the moving party

having the burden of proof at trial "must support its motion with credible evidence–using any of the materials specified in Rule 56(c) ['pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits'] –that would entitle it to a directed verdict if not controverted at trial. Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party either to produce evidentiary materials that demonstrate the existence of a "genuine issue" for trial or to submit an affidavit requesting additional time for discovery."

The evidentiary standards for proving an objection to discharge have been analyzed by Judge Randolph J. Haines as follows:

> The plaintiff, of course, always has the ultimate burden of proof. Bankruptcy Rule 4005. But depending on the procedural context, there are at least three possibly applicable evidentiary standards. The lowest of them is when the bankruptcy court has conducted a full trial and found that the discharge should be denied. Because the standard of review on appeal for the factual finding of the requisite intent is the clearly erroneous standard, *Devers,* 759 F.2d at 753, it will take only a modicum of evidence of fraudulent intent to sustain the bankruptcy court's finding. Possibly equal to that standard, but possibly a higher standard, is the strength of the evidence necessary at trial to shift the burden of going forward from the plaintiff to the debtor, to explain the innocence of his transactions and intent. The Fifth Circuit described that point as when plaintiff "makes a prima facie case." *Reed,* 700 F.2d at 992. In this precise context, *Reed* held that it is only upon a showing of fraud by the creditor, that the burden shifts to the Debtor to explain the transaction. *Id.* Finally, the highest standard is that required of a plaintiff to obtain summary judgment when the debtor has denied any fraudulent intent, because the court must then be convinced that no fact finder could infer that the debtor's intent was innocent. But generally "scienter should not be resolved by summary judgment," *Provenz v. Miller,* 102 F.3d 1478, 1489 (9th Cir.1996), so "credibility issues are to be left to the trier of fact to resolve on the basis of oral testimony *except* in extreme cases." *In re Chavin,* 150 F.3d 726, 728 (7th Cir.1998)(emphasis in original).
>
> Because this is summary judgment, plaintiff must satisfy that highest standard. Mere presentation of facts that could sustain a factual finding of fraudulent intent, or even establishment of a prima facie case, will not necessarily

be sufficient to win summary judgment, if on such undisputed facts a fact finder
could infer that the debtor's intent was innocent.

*Murphey v. Crater (In re Crater)*, 286 B.R. 756, 760-61 (Bankr.D.Ariz. 2002).  "A claim for

denial of a discharge under § 727 is construed liberally and in favor of the discharge and strictly

against a person objecting to the discharge."  *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876,

882 (9th Cir. BAP 2005) (citing *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342

(9th Cir. 1986).

"[P]laintiff must show that (1) the debtor knowingly and fraudulently made a false oath;

and (2) the false oath related to a material fact."  *Fogal Legware of Switz., Inc. v. Wills (In re*

*Wills)*, 243 B.R. 58, 62 (9th Cir. BAP 1999)  (citing *Aubrey v. Thomas (In re Aubrey)*, 111 B.R.

268, 274 (9th Cir. BAP 1990)).  "A false oath may involve a false statement or omission in the

debtor's schedules."  *Id*. (citing *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178

(5th Cir. 1992)).  As in *Wills*, Retz acknowledges in paragraph 2 of his answer to paragraph 6 of

Samson's complaint that he "[a]dmit[s] the filing of Schedules and Statement of Financial

Affairs as alleged but state[s] that shortly after the filing and subsequently it was make (sic)

known to Plaintiff [Samson] that the Schedules and Statement of Financial Affairs were

incomplete and in some respect inaccurate and would need to be amended."  The issues becomes

whether Retz acted with the requisite intent and whether the false statements and omissions were

material.

### a.  Knowingly and Fraudulently

As noted above Debtor must knowingly and fraudulently make a false oath.  First, the

Court considers the term "fraudulently."  The requisite fraudulent intent "must be actual, not

constructive.  *Wills* 243 B.R. at 64 (citing *Devers v. Bank of Sheridan (In re Devers)*, 759 F.2d 751, 753 (9th Cir. 1985)).  Samson may prove such intent through "circumstantial evidence or by inferences drawn from Retz's course of conduct."  *Id*. (citing *Devers*, 759 F.2d at 753-54).  Surrounding circumstances and certain badges of fraud may establish the necessary intent, including

> (1) a close relationship between the transferor and the transferee; (2) that the transfer was in anticipation of a pending suit; (3) that the debtor was in poor financial condition at the time of the transfer; (4) that the debtor transferred all or substantially all of his property; (5) that the transfer left no assets to satisfy creditors; and (6) that the debtor received inadequate consideration. *See In re Woodfield,* 978 F.2d 516, 518-19 (9th Cir.1992).

*Wills*, 243 B.R. at 64.  Although *Woodfield* involves 11 U.S.C. § 727(a)(2), the analysis of intent applicable to such section applies also to 11 U.S.C. § 727(a)(4).  6 COLLIER ON BANKRUPTCY, ¶ 727.04[1][a] (15th ed. rev.).  "A court may find the requisite intent where there has been a pattern of falsity or from a debtor's reckless indifference to or disregard of the truth."  *Wills*, 243 B.R. at 64 (citing *Garcia v. Coombs (In re Coombs)*, 193 B.R. 557, 564 (Bankr. S.D.Cal. 1996)).

The second term "knowingly" requires Retz to act deliberately and consciously.  *Roberts*, 331 B.R. at 883.  The following analysis from *Roberts*, is instructive:

> The bankruptcy court did not make a finding that Roberts acted deliberately and consciously in failing to make these disclosures until he amended his Statement. Instead, the court found that Roberts exhibited, "a careless and reckless approach to the important duty of disclosure in sworn bankruptcy filings." "Careless and reckless" is a lower standard than "knowing."
>
> An action is careless if it is "engaged in without reasonable care." *Id.* at 225. This is a negligence standard, not a knowing misconduct standard. A false statement resulting from ignorance or carelessness does not rise to the level of "knowing and fraudulent." *See, e.g., Mondore v. Mondore (In re Mondore),* 326 B.R. 214, 217 (Bankr.W.D.N.Y.2005) ("a false statement resulting from ignorance or carelessness is not one that is knowing and fraudulent").

11

> Similarly, recklessness does not measure up to the statutory requirement of "knowing" misconduct. An action is reckless if it creates, "a substantial and unjustifiable risk of harm to others [through] a conscious (and sometimes deliberate) disregard for or indifference to that risk ...." BLACK'S LAW DICTIONARY at 1298.  Since the bankruptcy court did not find that Roberts made his nondisclosures "knowingly" in the required sense, we cannot sustain the denial of his discharge.

*Roberts*, 331 B.R. at 884.  The Court notes however that "[a] reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar a discharge."  6 COLLIER ON BANKRUPTCY, ¶ 727.04[1][a] (15th ed. rev.).

The elements of "knowingly" and "fraudulently" may not be conflated.  They each must be proven.  *See Roberts,* 331 B.R. at 885.

As noted in Retz's sworn affidavit, he states on personal knowledge:

> 4.  As part of the preparation for filing my Petition I collected information and prepared serveral drafts of the Schedules and Statement of Affairs, which I provided to my bankruptcy attorney, Harold Van Dye.  In addition, I visited with Mr. Dye and provided him with information regarding my business and personal affairs in order that he be fully advised regarding my pre-Petition activities.

> 5.  In the draft versions of the Schedules and Statement of Financial Affairs I included various statements and facts regarding my activities.  However, those statements and facts did not in all instances appear in the final version of the documents which were filed.  I was personally present when Mr. Dye explained to the Trustee that the failure to include all information in those instances was due to the default provision of Mr. Dye's computer program and that Mr. Dye could confirm the information had been provided by me.  Due to my location, on request of my counsel I signed the signature page to the Schedules and Statements without seeing the filed version, believing them to have been consistent with my draft versions.

> 6.  At the 341 meetings I explained my inability to provide certain information.  I was involved in a number of businesses, each of which involved a substantial number of transactions in complex undertakings.  Preparing my schedules was mad difficult by the fact the business records for those companies

were in the possession of Jim Cossitt, then later the Trustee and finally, transferred by him to Mr. Abbey.  Anticipating the need for the records, prior to turning over the records to Mr. Cossitt in December 2003, I had my secretary make a duplicate copy of business records from the office.  Upon Mr. Cossitt's instruction, I did not remove those copies from the office.  They were turned over to the Trustee with the original records.  I told the Trustee there was a duplicate set intended for my use.  The trustee informed me we would "sort that out later" and he wold take possession of the records and put everything in a storage unit. He also instructed me to not present documents to him piecemeal, but to do so all at one time.

7.  . . . I made Mr. Samson aware of the fact that I needed access to that information when he came into possession.  I was told by Mr. Samson that I could get access when the records were  moved from a storage unit in Whitefish to Missoula.  However, I was not informed when they were moved to Missoula or subsequently transferred to Mr. Abbey.  As a result, my ability to reconstruct information was restricted or not possible at the time.  . . .

* * *

9.  The lack of an amendment to the Schedules and Statements was the result of two events.  First, I was advised that the Schedules and Statements should not be amended piecemeal but only when I was in a possession to complete information.  Second, even though I was attempting to provide information to the Trustee, who had my business and personal records, he had already filed this adversary proceeding.  I was advised attempting to amend after that filing would be meaningless or perceived as a concession.

Retz provides additional factual statements in his affidavit explaining his failure to have

provided or to have amended the information contained in his schedules and statement of

financial affairs.  *See* paragraphs 3-20.

Retz's attorney, Dye, provided the following statements, based on his personal

knowledge:

8. At all times Brendan Retz fully disclosed to me the events, facts and circumstances of the various transactions which form the basis of the adversarial complaints. Any failure to address the contentions of the Trustee was the result of legal advice on my part or a good faith belief Brendan and I were attempting to provide requested information.

13

9. As a result of the information Mr. Abbey was providing to the Trustee, even though the Trustee was in possession of the business and personal records of Mr. Retz, the Trustee assumed an adversarial and suspicious role against the Debtor, including the filing of the adversary proceeding to deny him a discharge, which affected the ability and manner in which information was provided.

10. The Schedules and Statement of Affairs were not amended, despite the intention to do so, as a result of the filing of the adversary Complaints. It was my advice and decision to not file the amendment.

* * *

12. Despite the adversarial nature of the proceedings and the effect it had on certain strategic decisions, I regularly communicated with the Trustee regarding efforts to obtain requested information and with regard to his concerns relative to the disclosure of assets on the part of Brendan Retz. Included in those communications was a discussion in or around August 2004 in which I advised the Trustee that due to the receivership of Timberland Construction, LLC (TC,LLC), Brendan Retz had purchased computer and office equipment for Timberland Construction, Inc. (TCI) and financed the same with Wells Fargo [Mr. Retz did not want to continue to make the payments on the Wells Fargo loan without Mr. Samson's permission as he held the TCI stock]. These very purchases were the basis of the allegations of paragraphs 8 and 12 of the Trustee's complaint.

Retz's sworn statement and Dye's unsworn statement under penalty of perjury establish factual statements beyond self-serving statement, which create a genuine issue of material fact as to whether Retz acted with the requisite intent under § 727(a)(4).  As an example, in *Wills*, evidence existed that debtors "transferred assets on the advice of their accountant for tax considerations."  *Wills* 243 B.R. at 65.  In the case *sub judice*, Retz states, as confirmed by Dye's statement that disclosures and amendments were not made as a result of Dye's legal advice. Whether that evidence holds up at the time of trial involves questions of fact.  "A common instance of 'false oath' is when a debtor declares that the schedule of property is true and correct and it appears that the debtor has knowingly and fraudulently omitted assets from it.  But if items

14

were omitted by mistake or upon honest advice of counsel, to whom the debtor had disclosed all

the relevant facts, the declaration will not be deemed willfully false, and the discharge should not

be denied because of it."  6 COLLIER ON BANKRUPTCY, ¶ 727.04[2] (15th ed. rev.) (citing *In re*

*Mascolo*, 505 F.2d 274, 277 (1st Cir. 1974) ("explanation by a bankrupt that he had acted upon

advice of counsel who in turn was fully aware of all the relevant facts generally rebuts an

inference of fraud").  Given the statements of Dye, material factual issues exist as to Retz's

knowingly and fraudulently making a false oath with the requisite intent.

### b.  Materiality

The second factor involves whether the false oath related to a material fact.  This broadly

defined term, materiality, is established if the false statement "bears a relationship to the debtor's

business transactions or estate, or concerns the discovery of assets, business dealings, or the

existence and disposition of the debtor's property."  *Wills*, 243 B.R. at 62 (citing *Chalik v.*

*Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984)).  The 9th Circuit Court has, in a

bankruptcy crimes case under 18 U.S.C. § 152, determined that materiality includes "(1) matters

relating to the extent and nature of the debtor's assets; (2) inquiries relating to the debtor's

business transactions or estate; (3) matters relating to the discovery of assets; (4) the history of

the debtor's financial transactions; and (5) statements designed to secure adjudication by a

particular bankruptcy court."  *Wills*, 243 B.R. at 62, n. 3 (citing *United States v. Lindholm*, 24

F.3d 1078, 1083 (9th Cir. 1994).

The Bankruptcy Appellate Panel in *Wills* provides the following instructive analysis to

consider in determining materiality:

The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and

creditors have accurate information without having to conduct costly investigations. *Aubrey,* 111 B.R. at 274. "[T]he opportunity to obtain a fresh start is ... conditioned upon truthful disclosure." *Id.* "The entire thrust of an objection to discharge because of a false oath or account is to prevent knowing fraud or perjury in the bankruptcy case. As a result, the objection should not apply to minor errors or deviations in testimony under oath." William L. Norton, Jr., NORTON BANKRUPTCY LAW AND PRACTICE 2d § 74.11 (1997). A false statement or omission that has no impact on a bankruptcy case is not grounds for denial of a discharge under § 727(a)(4)(A). 6 Lawrence P. King et al., COLLIER ON BANKRUPTCY ¶ 727.04[1][b] (15th ed. Rev.1998)(citing *In re Fischer,* 4 B.R. 517 (Bankr.S.D.Fla.1980)). As a result, omissions or misstatements relating to assets having little or no value may be considered immaterial. *See, e.g., In re Waddle,* 29 B.R. 100 (Bankr.W.D.Ky.1983). Likewise, omissions or misstatements concerning property that would not be property of the estate may not meet the materiality requirement of § 727(a)(4)(A). *See, e.g., In re Swanson,* 36 B.R. 99 (9th Cir. BAP 1984). However, an omission or misstatement relating to an asset that is of little value or that would not be property of the estate is material if the omission or misstatement detrimentally affects administration of the estate.

*Wills*, 243 B.R. at 63. Additionally,

In determining whether or not an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors. Even if the debtor can show that the assets were of little value or that a full and truthful answer would not have directly increased the estate assets, a discharge may be denied if the omission adversely affects the trustee's or creditors' ability to discover other assets or to fully investigate the debtor's pre-bankruptcy dealing and financial condition. Similarly, if the omission interferes with the possibility of a preference or fraudulent conveyance action the omission may be considered material. 6 King, COLLIER ON BANKRUPTCY ¶ 727.04[1][b].

*Wills*, 243 B.R. at 63.

As the Court above has concluded, material issues of fact exist. No further discussion of the conjunctive elements to determine whether Retz has made a false oath is necessary. For cause the Court will issue a separate Order as follows:

IT IS ORDERED that Plaintiff's motion for partial summary judgment as to Counts I and II of Plaintiff's complaint is denied; and that the parties shall be prepared to proceed to trial on

16

March 27, 2007, at 9:00 a.m., or as soon thereafter as counsel can be heard, in the

BANKRUPTCY COURTROOM, RUSSELL SMITH COURTHOUSE, 201 EAST

BROADWAY, MISSOULA, MONTANA.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana